Good morning ladies and gentlemen of the jury. May it please the court. I'm sorry, old habits die hard. Good morning your honors. May it please the court. My name is John Howes. I'm representing the appellant, Mrs. Swan, this matter. As I prepared myself to come down here, I went for a bicycle ride. I didn't make it out of my driveway because I had a flat tire. That flat tire reminded me of cardiacus and the wheel conspiracy that is at the heart of this case. And judge, I see you smiling. You know, I haven't heard from New Jersey where we're from, but we call it cardiacus. And we probably haven't, either of us, heard it since 1989. But so it's just bringing back good memories. As an aside, I'm from Central, I'm from Florida, and I was in the case with Judge Berry, and I couldn't figure out what they were talking about with the two oranges, east orange and west orange. So I am equally lost on this. But here's the heart of our case. I argued in the brief that there was insufficient evidence, and I probably didn't adequately address the heart of the matter, and that is there was a variance in the proof. How about that is not in the briefs, and how do you get around that? No, I talk about the variance in the brief. Variance between the indictment and the evidence? Between the indictment and the evidence. And you made a variance argument? Did you use the word variance? Yes, ma'am. Uh-huh. And tell me, what is your variance argument then? Here's what occurred. By the way, I don't think I saw that either. Okay. Yeah, I don't think I saw that either. And there's a whole body of law that doesn't say that. Well, I cited a couple of the cases. One of them I have in my notes that I cited two was Salmon, S-A-L-M-O-N, and United States v. Cartwright, which are the two cases that I would rely on. Here's what happened. Mr. Springett, and I know that you all have... We know the facts. Okay. Mr. Springett, Mr. Turnbull went down through Mr. Marks, had their operation. Here's where the difference is. They were dealing out of St. Thomas to where? North Carolina? There was a competing person, Mr. Swan, who was operating out of St. John, first into Philadelphia, then into New York. What was the testimony of Mr. Turnbull that's most important for us here? There were times when he was buying drugs from Mr. Swan. That takes Mr. Swan into a buyer-seller status as opposed to a conspirator status. How about the evidence that... Go ahead. No, you go. Go ahead. Thanks. On redirect, on this very point, I thought that I have in my notes that Turnbull confirmed that Swan had a drug route that went from St. Croix to Philadelphia and that Turnbull would send couriers to Baltimore where Swan lived to retrieve the drugs. I'm sorry. I didn't hear the end of it. Oh, I'm sorry. I didn't hear the end of it. Oh, I'm happy to dramatically talk into the microphone. So I said that on redirect on this very point of the government's witness, Turnbull confirmed that Swan had a drug route that went from St. Croix to Philadelphia and that Turnbull would send couriers to Baltimore where Swan lived to return the drugs, to retrieve the drugs. I'm sorry. But those were drugs that were not sent along the Turnbull group, Turnbull route, but was the Swan group. Remember, there was one of the defendants in trial in this case had a seizure, a physical seizure, and there was a seizure of drugs. There were times when there were drugs seized and when they needed to get drugs. They would go to Mr. Swan and get the drugs there. That's an example. I think to follow up what Judge Greenaway is talking about, there was evidence where Swan was to page Turnbull when drugs arrived so that Turnbull's couriers could come retrieve the drugs from Swan. And this is all from Mr. Turnbull's testimony. So I'm not sure how you can say that a bile cell relationship when it appeared that they were intertwined in the movement of these drugs for the purposes of Turnbull's further distribution. There was also evidence at times when Mr. Swan was attempting to go to Mr. Turnbull, not knowing that Mr. Mark was involved as Mr. Turnbull's importer from the British Virgin Islands, trying to get Turnbull to buy Swan's drugs as opposed to what were really Turnbull's drugs to begin with. Let's talk about the other commodity that went in the opposite direction. That is money from the United States back to others associated with this conspiracy you've identified. There was money supplied by Mr. Swan shipped back into the islands. That's true. But there's no showing that that money that was shipped back into the islands, in fact, came from or came to the Turnbull group. I mean, I can see Mr. Swan was dealing drugs. I can't dispute that. I would be more foolish than I probably am standing before you now if I were to make such a concession. Is the point that you're making that he was dealing in drugs, was dealing, was involved in a conspiracy, but not the conspiracy that was charged in the indictment? That is precisely my point. Not the Springett conspiracy? That's not the Springett conspiracy. If you look at the chart. And the evidence you say does not show that there was interlocking, interrelationships in the drug dealing between various conspiracies? There were relationships among those people, but there was not an agreement. If you go, the case that the government relied on most, Caraballo, Rodriguez, which was your en banc decision, refers to a case called Boyer. Boyer sets out three requirements. And I'm going to use an analogy because you are from Pennsylvania, the Pirates and the Phillies. Pirates and the Phillies have a shared unity of purpose. They want to win the games. They have an intent to achieve a common goal, winning the games. What do they both miss? This is the third point, and this is the heart of our argument. An agreement to work toward that common goal. Pirates players are not out there to help the Phillies win. Phillies players are not out there to help the Pirates win. They both want to win. They both want to go to the World Series. What team was Kayvon Isaacs on? Was he on Swan's team? Was he on the Springer team? He was in the middle. He's kind of in both, right? He was a drug dealer in both instances, but he was a player on Springer's team. You're not suggesting that you cannot be part of various conspiracies, are you? That you must be identified as part of a discrete conspiracy in order to be convicted? You don't have to be, no. You don't have to be. You can work with various dealers and sellers and resellers across the board, and you can become a member of various conspiracies. The Phillies might trade one of their players to the Pirates. That's true. I hate that because I hate both of those teams. I'm sorry. I'm a Yankee fan. Well done. But to be more specific as to the case at hand. Yes, sir. So I understand you're making a cadiacus argument, but the retort by Judge Fuentes was it's not cadiacus, and the government didn't have to prove cadiacus because it wasn't a – they weren't arguing a spoke theory. So, I mean, I understand that you'd like us to analyze it as a cadiacus conspiracy, but we're not – they're not bound to prove it. We're not bound to review it in that way. I can't argue with the court, but I can argue to the court, and I would suggest that their theory from the outset was Springett was a drug dealer. Springett got in trouble, was in prison, got his cousin Turnbull to take over his business, Marx the one that had the boats, got the air drafts in. That's the conspiracy. They were then shipping out of not St. Croix, St. John. They were going to North Carolina. Mr. Swan was going a different way from drugs that we don't even know where they come from. There's nothing in that record to show it. The evidence produced at trial showed Mr. Swan was a drug dealer. I can see that. He was not in this conspiracy. There was a variance with respect to the proof. The government threw out a large net and got basically everybody they could get. This person named Glennon discussed picking up drugs from Swan while on trips to New York, sometimes at the direction of Gail and Mark, and Kevin Isaac testified that he helped Swan package cocaine. Is that an interlocking conspiracy where individuals are helping distribute, collect money, and so forth? No, that's a buyer-seller relationship. They were buying drugs from him. If you look at their best argument, and that's part of our argument with respect to the improper closing argument, they keep talking about a conversation that occurred on events that happened on the government's concession outside the conspiracy. That would not be to you an agreement to package, to distribute drugs for profit? I'm a good judge. You would not say that that really entails an agreement among drug dealers to purchase, to package, and to sell drugs out in the street? The way this was set up, the way it was proven, the way it was shown, was that they were doing everything. It was going to Spring Act, Turnbull, Marks, money coming back to them. This was purchases from Swan in New York, by Swan to these people, by him selling to these people, and from Swan, who's the other witness who said he wasn't in the conspiracy, he's the one that finds out from one of his friends about buying the drugs from Swan. So it's a completely different conspiracy. Did you object to the instruction that the court gave the jury on this issue? I was not trial counsel. Did the trial counsel object to the in-court or over the instruction given to the jury? There was not an adequate objection made, Your Honor. Okay. So then is the issue preserved? Not that issue. Not the issue concerning conspiracy? There was an argument made with respect to the conspiracy, and some of the testimony from Mr. Swan was stricken. The instruction given, I suggest, was insufficient. Thank you. Good morning, Your Honors, and may it please the Court. Meredith Edwards on behalf of the United States. This Court has reviewed the Spring Act conspiracy on a number of occasions, and I'm urging the Court to find, just as it did with Mr. Gilly and Mark, that, in fact, these interconnected parts are all part of one drug conspiracy, with the goal being to get cocaine from South America through the BBIs, through St. Thomas, then to the mainland U.S., where it could be sold for a greater profit. There are many instances in the record that the cocaine, once it got to the United States, on this circuitous route, specifically went through Swan. Well, Turnbull testified that once he linked up with Mark and they were using a particular route to get to Charlotte, it became too hot after there were two seizures. And so that's when they turned to Swan, who had his own route, that he could securely get smuggle cocaine through the Baltimore-Philadelphia area. So it was still being used for that conspiracy. It was just instead of having two separate routes, we're now getting 10 kilos strictly to Baltimore, some of which would be kept for Swan's distribution and other times for Turnbull or whomever. I take the defendant's argument to be that his actions were parallel to the conspiracy but did not necessarily intersect the conspiracy. Well, this Court has held that having numerous objectives or even self-motivated desires to cut another out does not negate a conspiracy itself, so long as they aren't crossing with each other and prohibiting one from advancing over the other. When Swan was trying to cut Mark out, I think it actually furthers or strengthens the argument that there was indeed a conspiracy because all of the testimony focused on Mark being above Swan. So Swan necessarily would want to cut him out, cut the middle man out, and go one row higher, one rung higher, closer to Turnbull. So what's your best evidence that shows these two, that Mr. Swan was part of an interlocking conspiracy with the Springett group? Well, I think we've got strong evidence when Kevon Isaac testified about seeing Mr. Swan unpacking suitcases that were brought to him by couriers, the same method used by the Springett conspiracy, unloading in one suitcase I believe there were 18 kilos and in another 21 kilos. Does unpacking in the same way mean that he is part of both conspiracies? No, it doesn't, but it does add to show the connection. So that's hardly the only part, but it keeps building. And grain by grain, that is how this court has accepted proof of a conspiracy. So that's just one grain. On top of that, Swan himself told Kevon Isaac that he got his cocaine from Gillian Mark. Well, he referred to him as Kerwin. And then when he was packaging money and sending it back, again using the same packaging methods as the Springett conspiracy, which is a bit more unique in terms of heat sealing it and wrapping it under towels with the goal of it being undetected by the x-rays. And again, according to Kevon Isaac, Swan stated that it was going back to Kerwin for the cocaine. We also have Glenson Isaac who went to Defendant Swan at Gillian Mark's directive. We have Chris Sweeney's testimony that after an introduction through Glenson Isaac, he went and retrieved 20 kilos of cocaine from Defendant Swan. Again, that was at the direction of Gillian Mark. What team is Kevon Isaac on? Well, it appears that he was distributing or getting his source from Defendant Swan. It was one kilo, but I'm not sure whether I can say he was playing on. Do you think he was – did he have an affiliation or was he also a member of the Springett group with his brother and Marks and the others? I think tangentially, but I'm not sure that I would go as far. Quite frankly, based on his testimony, I mean, he admits to having been dealing drugs all of his life, but I think the stronger proof is actually with Glenson Isaac, who is an admitted co-conspirator and who pointed out Swan as well and getting drugs from him at Mark's directive. A testimony from a Christopher Sweeney was concerning a larger conspiracy. Can you tell me what his role was in the Springett conspiracy, if any? I believe that he was getting roped in or was making an entree into this group, but it appears, based on the testimony, that he hadn't gotten that far along before there were arrests made. But it appeared, based on his testimony, that his partner, who he dealt with, had been introduced to Glenson Isaac, and there was a plan for them to use the Springett conspiracy as their source of cocaine for distribution. What central figures in the Springett conspiracy testified that Swan was involved in the drug packaging and distribution? How was Swan linked to the Springett conspiracy? Again, from Turnbull, specifically mentioning that he got retrieved cocaine from him. Even though Kevan Isaac wasn't necessarily a member of the conspiracy, it was still a party-opponent admission and own self-declaration that he's getting the cocaine from Gillian Mark, and Kevan Isaac testified that he saw with his own eyes him unpacking the suitcases full of cocaine as well as taking care of the couriers and sending them to a hotel. If we could talk about that. The last argument in your adversary's submission has to do with the comment in the rebuttal submission, and it has to do with whether there was an accurate message to the jury, basically that the reference to some days ago was equivalent to some months ago to the two-kilo drug deal. So what's your position on that subject? Was an appropriate characterization for messages sent to the jury that that communication dealt with something that was actually months ago rather than days ago? I do think it was an appropriate argument. The exact quote of the phone call was that it was some time ago, and the only testimony when asked on direct when Glennson Isaac had ever gotten cocaine from defendant Swan, he referenced a half kilo that he retrieved and then a second time that he went to get four kilos, but it turned out only to be two kilos. And so he had to report back to Gilly and Mark about that, and he said he'd check with Swan to figure out what happened. But the importance of that two kilo, even though it was meant to be four, is that Glennson Isaac also testified about how Mark was setting him up to help him get back on his feet. And so even in defense's closing, they highlighted the fact that no money was exchanged. And then we've got this phone call for that two kilo deal. We've got this phone call where he's saying some time ago he gave two keys to Glenson Isaac, who we know is Glennson Isaac. And then he's also talking about not wanting to have to pay out of pocket and owe the organization essentially any money if he has to pay for a separate for distributing to someone else. But it's important because it links the two kilos and the only two kilos that Glennson Isaac ever discussed about getting from defendant Swan. And so during defense's close, they referenced, they argued that there was no corroboration. And you basically have to take this incredible story from Kevon Isaac and you've got no corroboration that Glennson Isaac ever got any drugs from defendant Swan. And so it was an appropriate response. And the government is afforded considerable latitude in their summation to argue their interpretation of the evidence and any reasonable inferences that can be drawn from it. So again, I do think it was an appropriate one. All right, if there are no questions, thank you. I will stay away from baseball and try to be brief. There were six couriers called to testify. They identified people, all females. None of them identified Mr. Swan. They had no showing of any connection of the couriers to Mr. Swan. I'm not saying that there weren't couriers used. If this were that conspiracy, then why didn't the government bring in those people? Is the core of your argument the variance argument that I believe you started out with or is it that the jury just got it wrong because there was insufficient evidence? Well, there's insufficient evidence because the evidence that was adduced at trial showed a different conspiracy than what's alleged in the indictment. I mean, that's where the variance comes in. That's where the problem is for my client. And you say that argument was made in the trial court? Not as well as it could have been. Is it not waived then? It's not waived. It's just not made well. He's arguing there's a difference there. Let me tell you the other thing that's most telling to me. You know, the reason I ask these questions is because we're so deferential to jury verdicts. And you know the standard. We're also deferential to the government in cases like this. Right. And so unless the record is really clear that we can make a different decision, I think, you know, we have to consider the role of the jury in assessing the evidence, the credibility of the witnesses, and so forth. I'm not looking for a 13th super-juror, as they talked about in Karabell. As you all talked about in Karabell. I'm not asking you for that. I'm asking you to fulfill your obligations to look at what was presented and to determine that there was a variance between what was charged and what was presented. And let me give you one last example of that. Turnbill does a chart. Springett does a chart. By those times, this is years into their cooperation, there's letters back and forth between them at those times. They never mentioned Mr. Swan because Mr. Swan wasn't one of theirs. He was his own, and they used him from time to time. Thank you very much for your consideration. Thank you, counsel. It's been a pleasure.